**In re Ronald KOCH, Debtor.**

**Bankruptcy No. 191–10480.**

United States Bankruptcy Court,
E.D. New York.

Jan. 26, 1999.

Neiman, Ginsburg & Mairanz, New York City, for Debtor.

Miller & Wrubel, P.C., New York City, for NBA.

## MEMORANDUM OPINION

CONRAD B. DUBERSTEIN, Chief Judge.

The matter under consideration in this Chapter 11 case was brought before this Court on the motion of the National Basketball Association and NBA Properties, Inc. (collectively, "NBA" or "Defendants"), seeking to intervene in this case, and for this Court to vacate its Order dated November 26, 1996, which had granted the application of the Debtor, Ronald Koch ("Koch" or "Debtor") to reopen his bankruptcy case which had been previously closed on January 6, 1992. The motion also seeks to have me vacate my Order dated January 17, 1997, which allowed him to amend his schedule of assets to include certain slides or the value of the same, which he claimed were property of his bankruptcy estate.

Upon consideration of the evidence and the arguments presented by all parties and for the reasons stated below, NBA's motion is granted in all respects.

### Background

On January 28, 1991, the Debtor filed a voluntary petition under Title 11 commencing this Chapter 7 bankruptcy case. The Debtor was a professional sports photographer who, as it hereinafter appears, claims to be the owner of over 2000 photographic slides. They were not listed in the schedules of his assets. The Debtor was represented by Robert Tauber, Esq., now deceased. Allan

Nisselson, Esq., was appointed as the Chapter 7 trustee of the Debtor's estate and he eventually filed a report of no assets. On January 6, 1992, a final decree closing the case and discharging the trustee was signed by this Court.

In or about June of 1993, almost a year and a half after this case was closed, the Debtor, as plaintiff, commenced an action against NBA, as the defendants, in the Supreme Court of the State of New York (hereinafter "the state court action"), captioned *Ronald Koch v. National Basketball Association, Inc. and NBA Properties, Inc.*, in which he seeks the return of 2,893 photographic slides which he claimed he owns and which he had turned over to NBA. The complaint further alleges that 1,566 slides were lost or misplaced by NBA. It also seeks punitive damages resulting from NBA's acts and conduct.

As a result of discovery including the examination of Koch conducted by NBA, pursuant to the laws of the state of New York, NBA moved for summary judgment to dismiss the complaint on the ground that the Debtor had no standing in the action when it learned for the first time of Koch's bankruptcy. It was NBA's contention that Koch had lost all rights, if any, to the slides or their value, the same having passed to his bankruptcy estate. During the pendency of the motion Koch sought bankruptcy counsel advice in order to protect his interests.

Consequently, on November 25, 1996, more than four years after this case was closed and more than three years after he commenced the state court action, Koch had bankruptcy counsel, who had replaced his deceased previous bankruptcy counsel, move this Court on Koch's behalf to reopen this bankruptcy case as permitted by 11 U.S.C § 350(b)[1] and Federal Rule of Bankruptcy Procedure 5010.[2]

---

1. 11 U.S.C. § 350(b) states:
   (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.
   11 U.S.C. § 350(b).

2. Federal Rule of Bankruptcy Procedure 5010 states:

A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

The application in support of the motion recited that, "Since these slides were not listed in the Debtor's schedules of assets, or abandoned by the Chapter 7 Trustee, who was unaware of this property, they remain property of the estate pursuant to 11 U.S.C. 554(d)." [3] (Debtor's App. Supp. Mot. Reopen, ¶ 7.) The application goes on to state, in pertinent part, that "there is a significant asset to be administered here (3)27 requiring the appointment of a Chapter 7 Trustee in order to protect the interests of the creditors and the Debtor in accordance with B.R. 5010." (Debtor's App. Supp. Mot. Reopen, ¶ 8.) The motion to reopen the case apparently was made by the Debtor to controvert NBA's contention that he had no interest in the slides to enforce in the state court action. In order to examine into all of the facts I signed my Order of November 26, 1996 reopening this case.

The application to reopen the case referred generally to the state court action, with only a passing reference to NBA's motion for summary judgment; a copy of the complaint naming NBA as defendants therein verified on June 15, 1993 was attached to the application, although it did not include a copy of NBA's answer to the complaint. I therefore made provision in my order reopening the case that a hearing be held before me at such time as would be fixed by this Court upon application by the attorney for the Debtor, on notice to the United States Trustee, Allan Nisselson who was the former Chapter 7 trustee, and NBA, to consider the relief requested by the Debtor in the reopened case, to wit, for "the appointment of a Chapter 7 Trustee in order to protect the interests of the creditors and the Debtor . . . ." (Debtor's App. Supp. Mot. Reopen, ¶ 8.)

Notwithstanding my foregoing direction in the Order, Koch's attorney failed to make an application for this hearing. Instead Koch moved to convert the case to a case under Chapter 11. The application in support of the motion to convert stated that at the time of the filing of the bankruptcy the Debtor's creditors were owed approximately $70,000 and in light of the alleged value of the slides, if the Debtor were successful in the state court action he would be able to fully reorganize in Chapter 11 and pay creditors 100% of their claims. The creditors listed in the Debtor's schedules and the United States Trustee were given notice of the motion to convert. Neither Allen Nisselson, the former trustee, nor NBA received notice of such motion. By reason of the provision of 11 U.S.C. § 706(a) [4], and recognizing the right of a debtor to convert his case from Chapter 7 to Chapter 11 without notice and a hearing, I granted that motion on December 19, 1996 which converted the case from a Chapter 7 case to a Chapter 11 case. It is abundantly clear that by doing so the Debtor was able to avoid the appointment of a trustee.

While NBA's motion for summary judgment was still pending in the state court action, on January 17, 1997 I entered an Order upon the application of the Debtor: (1) to amend his Schedule of Assets to include the slides, (2) to amend Schedule G which contained a Statement of Executory Contracts to include an agreement with NBA for use of the slides and, (3) to amend his Statement of Financial Affairs to reflect that the slides were in the possession of NBA. In an affidavit of the Debtor in support of the motion to amend he stated that the slides were not included in his original schedules because his previous bankruptcy counsel, now deceased, who prepared his original schedules told him that the slides did not have to be listed.

According to the Debtor, no notice of the application in support of the order was given other than to the creditors in light of the provision of Federal Rule of Bankruptcy Pro-

---

Fed. R. Bankr. P. 5010.

**3.** 11 U.S.C. § 554(d) states:
(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
11 U.S.C. § 554(d).

**4.** 11 U.S.C. § 706(a) states:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
11 U.S.C. § 706(a).

cedure 1009, which only requires that notice to amend the debtor's schedules be given to the "trustee and any entity affected thereby." Inasmuch as this case had been converted to a Chapter 11 case, there was no trustee to receive notice albeit there is no question that NBA certainly was affected by the proposed amendments.

On January 14, 1998 NBA moved before this Court for an order permitting it to appear as a party in interest in this case, or in the alternative, to intervene as an interested entity because of its claimed pecuniary and legal interests as the holder of the slides. In addition, as has been noted earlier, NBA argues that this Court should vacate its Order of November 26, 1996 which had permitted the Debtor to reopen this case, and the Order of January 17, 1997 which amended his schedules. It is this motion that is presently before this Court in which NBA argues that the Orders should be vacated because the Debtor failed to meet his burden of showing good cause and lack of fraud when he sought the reopening of his bankruptcy case, that he acted in bad faith in filing false and incomplete amended schedules, and that judicial estoppel barred reopening.

In answer to NBA's arguments, the Debtor contends that the motion should be denied because of NBA's failure to act timely in making its motion, almost 14 months after the original order to reopen the case was signed. In addition, the Debtor argues that NBA is not an interested party, nor does it have standing to intervene, but is merely interested in the outcome of the case. Lastly, the Debtor contends that the court should not vacate its previous orders because the Debtor relied on its previous bankruptcy counsel in initially not scheduling the slides and that he eventually returned to this court to reopen the case in order to administer the assets which should be included in his estate.

**Discussion**

*The "Party in Interest" Issue*

■ At the very outset, this Court is called upon to determine whether NBA has standing to appear in this bankruptcy case. NBA contends first that it qualifies as a party in interest under 11 U.S.C. § 1109(b), and as such, has standing to contest the reopening and seek the remaining relief in its motion. Applicable only in Chapter 11 cases, 11 U.S.C. § 1109(b) provides:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). NBA argues that it holds a pecuniary interest as the holder of slides that the Debtor claims as part of this bankruptcy estate. In addition, NBA contends that it has a legal stake in this bankruptcy case by reason of a decision of the Appellate Division of the State of New York, First Department, arising out of an appeal from a judgment of the Supreme Court in the state court action in which NBA's motions for summary judgment had been denied. The decision of the Appellate Division, which will be discussed later in this opinion, held that although NBA's motions for summary judgment had been denied, it would be allowed to renew its motion to dismiss the state court action in the event it was successful in this Court in contesting Koch's reopening of his bankruptcy case. The NBA argues, in the alternative, if it does not qualify as a party in interest under 11 U.S.C. § 1109(b), then it should be permitted to intervene as an interested entity pursuant to Federal Rule of Bankruptcy Procedure 2018(a).[5]

■ While § 1109(b) provides the identifier "party in interest" as who may be heard in a particular bankruptcy case, its list of examples is not inclusive.[6]

---

**5.** Federal Rule of Bankruptcy Procedure 2018(a) states:

(a) Permissive Intervention. In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene

generally or with respect to any specified matter.

FED. R. BANKR. P.2018(a).

**6.** 11 U.S.C. § 102(3) states:
(3) "includes" and "including" are not limiting.

■ The lack of a definition for "party in interest" in the Bankruptcy Code was an issue before this Court in *In re American Motor Club, Inc.*, 149 B.R. 317 (Bankr. E.D.N.Y.1993). In that case, I held that the circumstances of the case determines who qualifies as a party in interest. *Id.* at 322. The circumstances in the present case, namely Koch's failure to list the slides in which NBA appears to have an interest as reflected in the amendment to his Statement of Financial Affairs in which he refers to NBA as being in possession of many slides, and his subsequent state court action in which NBA's interest in the slides is disputed, unequivocally points to NBA as a party in interest. Finally, it has been noted that I provided for NBA to have notice of a hearing in my order reopening the case in order to allow it to be heard regarding the relief sought by the Debtor in reopening his case.

The Debtor argues that NBA is not a party in interest, but rather an entity merely interested in the outcome, citing *In re City of Bridgeport*, 128 B.R. 30 (Bankr.D.Conn. 1991). That case is inapposite. In *Bridgeport*, the city of Bridgeport had commenced a Chapter 9 bankruptcy case seeking the adjustment of its debts as a municipality. The bankruptcy court denied party in interest status to an association representing cities and towns in Connecticut because it did not have a direct legal interest in the bankruptcy case, but was only interested to the extent that the bankruptcy would be affecting the rest of Connecticut's cities and towns. *Id.* at 31–32. The facts in the instant case, however, differ from *Bridgeport* because NBA has an actual, direct interest in this bankruptcy case inasmuch as it claims to be the owner of property which the Debtor claims belongs to his bankruptcy estate.

By reason of all of the foregoing, I find that NBA is a party in interest and thus there is no need to discuss NBA's alternate argument that it should be permitted to intervene as an interested entity pursuant to Federal Rule of Bankruptcy Procedure 2018(a).

11 U.S.C. § 102(3).

### The State Court Action and the Involvement of the Bankruptcy Court for the Southern District of New York

It was not until NBA initiated its instant motion that I became aware of all that had taken place in the state court action other than the pendency of NBA's first motion for summary judgment. I also learned for the first time of the intervention of the Bankruptcy Court for the Southern District of New York in connection with that action. A review of the activity in the state court action as well as in the Bankruptcy Court is necessary to the proper determination of the issues before this Court.

#### i. The State Court Action

In the state court action, Koch claimed that as early as October of 1968 he and NBA had cooperated in NBA's use of photographic slides Koch had taken of basketball players. He alleged that in the beginning of 1978 he entered into a verbal agreement with NBA regarding the use of the slides. The agreement allegedly called for the payment of fifty percent (50%) of all usage and licensing fees collected by NBA. Koch's complaint alleged that 2,893 slides were turned over to NBA since they began working together and that NBA has lost or misplaced 1,566 of those slides.

Before responding to Koch's allegations, it was during discovery, as has been noted, that NBA first learned of Koch's bankruptcy. It appears that as a result of NBA's request for certain documents, it was furnished with a letter from Koch's state court counsel dated June 12, 1996 which enclosed tax summaries and a handwritten letter dated December 7, 1993 signed by Koch noting that he had filed for bankruptcy in 1991. Because of its discovery that Koch had not listed the slides in his bankruptcy schedules which NBA apparently had been able to eventually obtain and examine, it moved on October 15, 1996 before the state court for summary judgment for a dismissal of the action. The motion, brought pursuant to New York Civil Practice Law and Rule 3212, was based upon Koch's lack of capacity to sue for ownership of property which he had not claimed as belonging to him

at the time of his bankruptcy and that Koch's punitive damages claim failed to state a cause of action. The motion also sought sanctions against Koch for instituting the action.

### ii. The Involvement of the Bankruptcy Court of the Southern District of New York

Thereafter and on December 26, 1996, without any notice to this Court and shortly after this case was reopened, the Debtor removed the state court action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1452(a) [7], claiming that the federal court had jurisdiction based on 28 U.S.C. § 1334(b).[8] Simultaneously with the removal to the District Court, the action was further removed to the Bankruptcy Court of the Southern District of New York. The Debtor then moved that court to transfer venue to this Court, pursuant to 28 U.S.C. § 1412 [9] and Federal Rule of Bankruptcy Procedure 1014(a)(1).[10]

NBA filed a timely response in the Southern District of New York Bankruptcy Court objecting to Koch's notice of removal. It also moved that Bankruptcy Court for an order directing the Court to mandatorily abstain from hearing the case under 28 U.S.C. § 1334(c)(2) [11] and to remand the action to the state court under 28 U.S.C. § 1452(b) [12], or in the alternative, for the Bankruptcy Court to exercise its discretion to abstain from hearing the action pursuant to 28 U.S.C. § 1334(c)(1) [13] and remand it to the state court pursuant to 28 U.S.C. § 1452(b).

Thereafter on January 23, 1997 Honorable Tina Brozman, Chief Bankruptcy Judge of the Southern District of New York, to whom the action was removed, issued an order granting NBA's motion for mandatory ab-

---

**7.** 28 U.S.C. § 1452(a) states:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

**8.** 28 U.S.C. § 1334(b) states:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

**9.** 28 U.S.C. § 1412 states:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

**10.** Federal Rule of Bankruptcy Procedure 1014(a)(1) states:

If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a)(1).

**11.** 28 U.S.C. § 1334(c)(2) states:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

**12.** 28 U.S.C. § 1452(b) states:

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b).

**13.** 28 U.S.C. § 1334(c)(1) states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

stention and remanded the action back to the New York State Supreme Court, County of New York. *Ronald Koch v. National Basketball Ass'n, Inc. and NBA Properties, Inc. (In re Ronald Koch)*, Adv. No. 96–9392A (Bankr.S.D.N.Y. Jan. 23, 1997). The order recited the procedural activity in the state court action, including among other things, that it had been pending before Hon. Lewis R. Friedman, Justice of the New York State Supreme Court, that he was familiar with the issues involved in the state court action, and that a pre-trial conference had already been held in the state court. Judge Brozman's order found that mandatory abstention applied because:

(a) NBA had timely moved for the abstention; (b) the *Koch State Court Action* is based solely upon New York State law claims and involves no issues of federal law; (c) the *Koch State Court Action* is non-core pursuant to 28 U.S.C. § 157, does not "arise under" title 11, and did not "arise in" Koch's bankruptcy case; (d) the sole basis for federal jurisdiction over the *Koch State Court Action* is 28 U.S.C. § 1334(b); (e) the *Koch State Court Action* was commenced in New York State Supreme Court; and (f) the *Koch State Court Action* can be timely adjudicated in New York State Supreme Court.

*Id.* at 5. In addition, Judge Brozman stated that the state court action was not a turnover proceeding and therefore not a core proceeding under 28 U.S.C. § 157(b)(2)(E). *Id.* at 6. The order concluded that the abstention motion be granted, the case be remanded to the New York State Supreme Court, New York County and that the venue transfer motion be denied as moot. No appeal was taken by Koch from Judge Brozman's order. Thus the action is presently pending in the New York State Supreme Court.

### iii.   Continuation of the State Court Action After Remand

Upon remand of the action to the state court, NBA again moved for summary judgment which was heard by Justice Friedman. That motion argued that pursuant to New York Civil Practice Law & Rule 3212 the court should grant summary judgment on the ground that Koch's action was barred by the

doctrine of judicial estoppel. The prior motion for summary judgment and the second one were consolidated by Justice Friedman for decision.

On June 24, 1997, Justice Friedman denied both motions for summary judgment. *Koch v. National Basketball Ass'n, Inc.,* No. 93–114999, slip op. (N.Y. Sup.Ct. June 30, 1997). He explained that the fact that this Bankruptcy Court had allowed the Debtor to amend his schedules added an "interesting wrinkle" to the effect that the state court could not hold that Koch was judicially estopped from claiming ownership of the slides since the slides were now considered to be scheduled as an asset of his estate *nunc pro tunc* as of the original filing of this Bankruptcy case. *Id.* at 2. In addition, and for the same reason, the earlier motion for summary judgment that sought dismissal of the action on the grounds of lack of capacity to bring suit was found to be moot, also by virtue of the amendment of Koch's schedules. The court dismissed the cause of action for punitive damages brought by Koch because it found that such claim can not be brought as a separate cause of action. Lastly, Justice Friedman denied NBA's request for sanctions against Koch because of this Court's order permitting Koch to amend his schedules. The Court did note:

While it appears that had the plaintiff not been permitted to reschedule his assets he would have lacked capacity to sue and the action would have been subject to dismissal (*Dynamics Corp. v. Marine Midland Bank–New York,* 69 N.Y.2d 191, 513 N.Y.S.2d 91, 505 N.E.2d 601) in fact the Bankruptcy Court has permitted the plaintiff to cure this fatal defect and to proceed here.

*Id.* at 4.

Thereafter, the Debtor filed an Amended Verified Complaint dated June 25, 1997 which amended the original Complaint by removing an accounting cause of action, and modifying the two remaining causes of action. The first cause of action now seeks damages totaling $2,349,000 for the allegedly lost slides and $5,000,000 in punitive damages. The second cause of action seeks the

return of 1,327 slides allegedly in NBA's possession or damages in the amount of $1,999,500, and $5,000,000 in punitive damages.

NBA filed a Verified Answer to the Amended Complaint stating that it actually is in possession of over 3000 photographic slides that Koch gave to it or which had been sold to NBA by Koch. NBA contended that a letter agreement dated October 18, 1990 existed and superseded any prior oral agreements between the parties, and that the letter agreement released NBA of any liability for loss or damage to the slides. It also alleged that the letter agreement recited that Koch would keep copies of all slides given to NBA, it would not be liable for any loss or damage to the copies of the slides which NBA had been given, that the only damage claim Koch could have would be in respect to the use or licensing by NBA of the slides, and that damages were allegedly limited to a maximum amount of $2,000 if used for a product or promotion, or $3,000 if used as both a product and a promotion. NBA further claimed that the letter agreement stated that any action must be brought within six months after the date of NBA's first use of the slides and therefore Koch's claims were time barred because the six month period had passed. NBA finally argued that Koch was limited by the terms of that letter agreement. NBA also used judicial estoppel as a defense claiming that since Koch had not claimed ownership to the slides in his original bankruptcy proceeding, he could no longer claim ownership.

Subsequently, NBA appealed to the Appellate Division, First Department, from Justice Friedman's Order of June 24, 1997 which denied NBA's motions for summary judgment. At the outset of this opinion, this Court referred to the role of the Appellate Division, which, as so noted earlier, is now discussed insofar as it bears upon the issue presented to this Court for its determination.

The Appellate Division modified Justice Friedman's Order. *Koch v. National Basketball Ass'n, Inc.*, 245 A.D.2d 230, 666 N.Y.S.2d 630, 631 (1st Dept.1997). It explained that the doctrine of judicial estoppel, as applied in bankruptcy,

[B]ars a party from pursuing claims not listed in a bankruptcy proceeding that resulted in the party's discharge, does not apply in the absence of a final determination in the bankruptcy proceeding endorsing the party's inconsistent position concerning his or her assets. Here, the reopening of the bankruptcy proceeding, which the Bankruptcy Court was empowered to do in its sole discretion, revived the original bankruptcy proceeding and all the procedural and substantive rights of the debtor therein, plaintiff herein, and thereby nullified the final determination upon which a judicial estoppel could be predicated. Nevertheless, since the order reopening the bankruptcy proceeding was granted with the proviso that a hearing be held on notice to defendants, their remedy, as parties in interest, is to contest the reopening before the Bankruptcy Court, and should they prevail, to renew their summary judgment motions to dismiss the complaint as barred by judicial estoppel.

*Id.* at 631 (citations omitted).

### The Reopening of the Case

This Court is of the opinion that it properly ordered this case to be reopened pursuant to its Order of November 26, 1996, so as to provide it and all parties in interest an opportunity to consider the relief requested by Koch as stated in his application in support of the order. It would appear that Koch was desirous of having this Court administer in the reopened case, assets which he failed to disclose during the course of his bankruptcy. Thus, a just decision to vacate that order requires a review of the facts, including Koch's acts and conduct, which led to the reopening of the case, as well as a discussion of the appropriate authorities dealing with the issues involved in this case.

The facts which occurred in the case before it was closed, as well as the activity in Koch's state court action, have already been referred to.

█ Where a court is called upon to reopen a case, there appear to be three aspects which it should consider, namely, the benefit

to the debtor, the prejudice to the affected entity, as in this case, NBA, and finally, the benefit to the creditors. *In re Maloy,* 195 B.R. 517, 518 (Bankr.N.D.Ga.1996).

### i. The Benefit to the Debtor

■ At first blush, it would appear that the Debtor would benefit by reopening this case. It is obvious that he believed that in a reopened case, he, or his trustee, would be able to appear as a party in interest in the state court action, thus defeating NBA's motion for summary judgment made there on the grounds that he was not a proper party in interest to appear in it as the plaintiff. As stated in his application to reopen, he contended that if he prevailed in the action, his recovery would enure to his estate, and after paying the creditors one hundred percent of the amounts due them, he estimated that he would have available for himself a very substantial surplus. Thus, it cannot be disputed that the reopening of this case had all the aspects of benefitting him. There is no doubt, however, that in the final analysis as will be later discussed, reopening the case did not benefit nor should it benefit him at all.

### ii. The Prejudice to NBA

That NBA was prejudiced by the reopening of the case, is abundantly clear. It certainly hindered their efforts to dismiss the state court action by way of their motion for summary judgment. As a result, they were burdened with the expense and time-consuming efforts in the action, both before and after the case was reopened. Not only were they immersed in efforts to defeat the action in the State Supreme Court but in the Appellate Division as well. Later, after the case was reopened, it was necessary for them to appear before Chief United States Bankruptcy Judge Tina Brozman in the Southern District of New York, in opposition to the removal of the action, and have it remanded back to the state court, and finally by coming into this Court in their efforts to vacate the order which reopened the case. In criticizing NBA for its delay in opposing the reopening, Koch clearly was oblivious to the fact that NBA had been engaged in a lengthy discovery procedure in the state court action precipitated by Koch's opposition to their efforts to have the action dismissed, even after the case was reopened.

### iii. The Benefit to the Creditors

To determine whether the creditors benefitted from the reopening of the case calls for a candid review of Koch's conduct regarding their interest.

First, by concealing, or at least, failing to disclose the slides as an asset of his estate when he filed his petition in bankruptcy, he prevented not only the creditors but his trustee as well, from objecting to his discharge [14] which he received after the time to do so had expired.[15] It was equally too late for them to revoke his discharge.[16] Free of their claims which were wiped out in his bankruptcy, he then commenced the state court action to seek a possible substantial recovery from NBA. Such recovery would

---

**14.** Federal Rule of Bankruptcy Procedure 4004(a) states:

> In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

FED. R. BANKR P. 4004(a).

**15.** 11 U.S.C. § 727(c) states:

> (c)(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.
> (2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

11 U.S.C. § 727(c).

**16.** 11 U.S.C. § 727(e) states:

> (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge -
> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
> (2) under subsection (d)(2) or (d)(3) of this section before the later of -
> (A) one year after the granting of such discharge and
> (B) the date the case is closed.

11 U.S.C. § 727(e).

have only inured to himself and there would be nothing for his creditors, since they no longer had any claims against him, the same having been wiped out when he received his discharge. It was not until years after the action was commenced that NBA discovered the fact that he had been in bankruptcy and that since his trustee had no knowledge of the slides they were never abandoned.[17] *See, Dynamics Corp. of Am. v. Marine Midland Bank–New York,* 69 N.Y.2d 191, 195–6, 513 N.Y.S.2d 91, 505 N.E.2d 601 (1987); *In re C & M Plastics, Inc.,* 168 A.D.2d 160, 571 N.Y.S.2d 343, 344 (1991).

Thus when NBA took steps to dismiss the action on the grounds that he was not a proper party in interest to be the plaintiff in the action, he moved to reopen this case solely in order to qualify as the proper party in interest, or as stated in his application to reopen the case, at least to have a trustee appointed, presumably to pursue the action on behalf of the creditors as well as for Koch himself. Nevertheless, as we have seen, shortly before a trustee could be appointed Koch converted his Chapter 7 case to this present Chapter 11 case. Consequently, he avoided the appointment of a trustee together with the possibility that such trustee would be able to examine into the pending state court action in order to determine not only whether it was meritorious, but also whether as trustee he could be substituted for Koch as a proper party plaintiff in the action. Koch, therefore, became the sole person in his capacity as Debtor–in–Possession in this Chapter 11 case to pursue the action.

It is clear that by reopening the case and immediately converting it to a Chapter 11, Koch's design and plan was to have himself as a Debtor–in–Possession in his Chapter 11 case be substituted as the "party in interest"/plaintiff in the action. But this would have availed him naught because by doing so, he would not have cured the defect which he caused when he commenced the action at a time when the slides had not been abandoned by the trustee. *See, C & M Plastics,* 571

N.Y.S.2d at 344. Only the trustee, who had been serving in the case prior to its closing could have qualified as a party in interest to commence the action. Thus Koch's contention that by converting his case to a Chapter 11 with an opportunity to propose a plan of reorganization which would have given the creditors one hundred percent of their claims, was deceptive. By not enabling his trustee to commence a similar action before the case was closed, or after it had been reopened, he prevented the creditors from participating in any recovery.

■ Unfortunately, it is with great difficulty that this Court can believe that the slides had no value when he went into bankruptcy, when it is quite clear that eventually he commenced the state court action to recover from NBA millions of dollars for the slides. Even if this Court were to accept Koch's blaming his former bankruptcy attorney for not listing the slides as an asset, albeit the attorney is now deceased and there is no way to verify what he told Koch, coupled with Koch's evident intention to realize the benefit of those slides for himself after his bankruptcy case was closed, does not suggest that he acted in good faith, which is an important element that the court looks to in authorizing the reopening of a bankruptcy case. *See, Maloy,* 195 B.R. at 520. Koch's lack of good faith is further demonstrated by his failure to notify his former trustee of the existence of the slides before he commenced the action to allow the trustee to make a decision to commence the action in the state court before Koch did. Assuming arguendo that the trustee would then have initiated the action, and further assuming that he would have recovered the same substantial amount as sued for by Koch, there would have been no need to convert the case to a Chapter 11 to provide for a plan of reorganization to pay the creditors 100% of the amounts due them.

■ The lack of the element of good faith suggests an all too casual disregard for the disclosure requirements of this Court, and the fair and equitable treatment of Koch's creditors as called for by the Bank-

---

**17.** See FN 3 for text of 11 U.S.C. § 554(d) which states that property not abandoned or adminis-

tered by a trustee remains property of the estate.

ruptcy Code, since they did not benefit from the reopening. *See, Maloy,* 195 B.R. at 520. Were this Court to condone Koch's conduct under the facts in this case, it would encourage debtors to conceal their assets to have the claims of their creditors discharged, and then, as was done by Koch in his case, commence an action to realize the value of those assets without their participation. This would undermine the integrity of the bankruptcy court. The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case. *In re Trident,* 52 F.3d 127, 131 (6th Cir.1995), *cert. denied,* 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995); *In re Kingston Square Assoc.,* 214 B.R. 713, 724 (Bankr.S.D.N.Y.1997). As a court of equity, this Court is guided by equitable doctrines and principles. *See, SEC v. U.S. Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). It is undisputed that this Court can invoke its inherent powers by vacating the orders which reopened the case and allowed the schedules to be amended if it determines, as it has done here, "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *In re Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Universal Oil Prods. v. Root Ref. Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)).

Having considered all the facts and circumstances presented to this Court in the course of its deliberation, it finds that Koch's efforts to reopen this case after he commenced the state court action did not cure the defect that exists in the action to the extent, as NBA argues, that Koch neither was, nor is, a real party in interest as plaintiff in the action. *C & M Plastics,* 571 N.Y.S.2d at 344; 2 CARMODY–WAIT 2d, *NY Practice* §§ 11:28, at 254–255; 82 N.Y. JUR.2d *Parties* § 45.

By reason of the foregoing, this Court is of the opinion that it is justified in vacating its orders which reopened this case and amended the Debtor's schedules. Although NBA did not move to vacate my Order of December 19, 1996 which converted Koch's Chapter 7 case to the present one under Chapter 11, it also will be vacated by me *sua sponte* as not having been applied for in good faith.

Whether or not the state court action is also barred by the doctrine of judicial estoppel, as argued by NBA, is also left to the discretion of the state court.

### The Findings of Fact

The foregoing opinion constitutes this Court's findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Conclusions of Law

This court has jurisdiction over the instant matter pursuant to 28 U.S.C.A. §§ 157 & 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986. NBA's motion is a core matter within 28 U.S.C.A. § 157(b)(2)(A).

The motion of NBA to vacate this Court's Orders of November 26, 1996 which reopened this case, and January 17, 1997 which allowed the Debtor to amend his schedules, be and the same is hereby granted in all respects.

The Order dated December 19, 1996 converting the Chapter 7 case to one under Chapter 11 is hereby vacated.

The attorneys for NBA are directed to settle an order in conformity with this opinion.

So Ordered.